APPEAL,CLOSED,TYPE−C

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: <u>1:24−cv−02519−BAH</u>

MARTINEZ MORALES v. UNITED STATES
DEPARTMENT OF TREASURY, OFFICE OF FOREIGN
ASSETS CONTROL et al
Assigned to: Judge Beryl A. Howell
Cause: 05:0706 Judicial Review of Agency Actions

Date Filed: 09/03/2024
Date Terminated: 07/27/2026
Jury Demand: None
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**LUIS MIGUEL MARTINEZ
MORALES**

represented by **Alexei Schacht**
LAW OFFICE OF ALEXEI SCHACHT
123 W. 94th Street
New York, NY 10025
646−729−8180
Email: <u>alexei@schachtlaw.net</u>
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**OFFICE OF FOREIGN ASSETS
CONTROL OF THE UNITED
STATES DEPARTMENT OF THE
TREASURY**

represented by **Cassandra Snyder**
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
202−346−4218
Email: <u>cassiesnyder@goodwinlaw.com</u>
*TERMINATED: 09/04/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Bean**
DOJ−CIV
Civil Division
1100 L Street
Washington, DC 20005
202−405−9619
Email: <u>samuel.b.bean2@usdoj.gov</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Suwanda**
DOJ−CIV
1100 L Street NW
Washington, DC 20005
202−305−3196

1

Email: sarah.m.suwanda@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ANDREA M. GACKI**                    represented by    **Cassandra Snyder**
*TERMINATED: 02/24/2025*                                 (See above for address)
                                                         *TERMINATED: 09/04/2025*
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Samuel Bean**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Sarah Suwanda**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**JANET L. YELLEN**                    represented by    **Cassandra Snyder**
*THE HONORABLE, in her official*                         (See above for address)
*capacity as Secretary of the Department )*              *TERMINATED: 09/04/2025*
*of Treasury*                                            *LEAD ATTORNEY*
*TERMINATED: 02/24/2025*                                 *ATTORNEY TO BE NOTICED*

                                                         **Samuel Bean**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Sarah Suwanda**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**LISA M. PALLUCONI**                  represented by    **Cassandra Snyder**
*in her official capacity as Acting Director*            (See above for address)
*of the Office of Foreign Assets Control*                *TERMINATED: 09/04/2025*
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Samuel Bean**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Sarah Suwanda**

2

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SCOTT BESSENT**                                    represented by   **Cassandra Snyder**
*in his official capacity as Secretary of the*                        (See above for address)
*Department of Treasury*                                              *TERMINATED: 09/04/2025*
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Samuel Bean**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Sarah Suwanda**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/03/2024 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number ADCDC−11130726) filed by Luis Miguel Martinez Morales. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Gacki, # 3 Summons Yellen, # 4 Summons OFAC)(Schacht, Alexei) (Entered: 09/03/2024) |
| 09/03/2024 | 2 | ENTERED IN ERROR.....MOTION to Amend/Correct 1 Complaint, by Luis Miguel Martinez Morales. (Schacht, Alexei) Modified on 9/6/2024 (zsl). (Entered: 09/03/2024) |
| 09/03/2024 | 3 | AMENDED COMPLAINT by Luis Miguel Martinez Morales. (Schacht, Alexei) Modified on 9/6/2024 to correct docket entry text (zsl). (Entered: 09/03/2024) |
| 09/06/2024 |  | NOTICE OF NEW CASE ERROR regarding 1 , 2 , 3 Complaint/Amended Complaint,. The following error(s) need correction: Noncompliance with LCvR 5.1(c). Please file a Notice of Errata stating the error and attach the corrected initiating pleading to include the name & full residence address of each party and file using the event Errata. Blank/Incomplete/Missing civil cover sheet. Please file the Civil Cover Sheet (JS44) form at www.dcd.uscourts.gov/new−case−forms using the event Civil Cover Sheet. Missing summonses− U.S. government. When naming a U.S. government agent or agency as a defendant, you must supply a summons for each defendant & two additional summonses for the U.S. Attorney & U.S. Attorney General. Please submit using the event Request for Summons to Issue. Form filed as fillable PDF. Please file form in a non−fillable PDF format. **COMPLIANCE DEADLINE is by close of business today. This case will not proceed any further until all errors are satisfied.** (zsl) (Entered: 09/06/2024) |
| 09/06/2024 | 4 | CIVIL COVER SHEET by LUIS MIGUEL MARTINEZ MORALES filed by LUIS MIGUEL MARTINEZ MORALES.(Schacht, Alexei) (Entered: 09/06/2024) |
| 09/06/2024 | 5 |  |

3

| | | |
|---|---|---|
| | | ERRATA re 3 Amended Complaint by LUIS MIGUEL MARTINEZ MORALES. (Attachments: # 1 Amended Complaint)(Schacht, Alexei) Modified on 9/6/2024 to correct docket entry text (zsl). (Entered: 09/06/2024) |
| 09/06/2024 | 6 | REQUEST FOR SUMMONS TO ISSUE filed by LUIS MIGUEL MARTINEZ MORALES. (Attachments: # 1 Summons)(Schacht, Alexei) (Entered: 09/06/2024) |
| 09/06/2024 | | Case Assigned to Judge Beryl A. Howell. (zsl) (Entered: 09/06/2024) |
| 09/09/2024 | 7 | SUMMONS (5) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(znmw) (Entered: 09/09/2024) |
| 09/11/2024 | 8 | STANDING ORDER. Signed by Judge Beryl A. Howell on September 11, 2024. (lcbah1) (Entered: 09/11/2024) |
| 09/16/2024 | 9 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 9/10/2024. Answer due for ALL FEDERAL DEFENDANTS by 11/9/2024. (Schacht, Alexei) (Entered: 09/16/2024) |
| 10/29/2024 | 10 | NOTICE of Appearance by Cassandra Snyder on behalf of All Defendants (Snyder, Cassandra) (Entered: 10/29/2024) |
| 11/01/2024 | 11 | Consent MOTION for Extension of Time to File Answer re 5 Errata *Complaint* by ANDREA GACKI, OFFICE OF FOREIGN ASSETS CONTROL OF THE UNITED STATES DEPARTMENT OF THE TREASURY, JANET L. YELLEN. (Attachments: # 1 Text of Proposed Order)(Snyder, Cassandra) (Entered: 11/01/2024) |
| 11/04/2024 | | MINUTE ORDER (paperless) GRANTING defendants' 11 Consent Motion for Extension of time; and DIRECTING defendants to answer or otherwise respond to plaintiff's 1 Complaint by December 23, 2024. Signed by Judge Beryl A. Howell on November 4, 2024. (lcbah1) (Entered: 11/04/2024) |
| 11/04/2024 | | Set/Reset Deadlines: Defendant Answer Or Otherwise Response To The Plaintiff's 1 Complaint due by 12/23/2024. (mac) (Entered: 11/04/2024) |
| 12/23/2024 | 12 | ANSWER to Complaint by ANDREA GACKI, OFFICE OF FOREIGN ASSETS CONTROL OF THE UNITED STATES DEPARTMENT OF THE TREASURY, JANET L. YELLEN.(Snyder, Cassandra) (Entered: 12/23/2024) |
| 01/06/2025 | 13 | Joint STATUS REPORT by ANDREA GACKI, OFFICE OF FOREIGN ASSETS CONTROL OF THE UNITED STATES DEPARTMENT OF THE TREASURY, JANET L. YELLEN. (Snyder, Cassandra) (Entered: 01/06/2025) |
| 01/08/2025 | | MINUTE ORDER (paperless), upon consideration of the parties' 13 Joint Status Report, DIRECTING the parties to file a Meet and Confer Statement 7 days after plaintiff receives defendants' written response to plaintiff's request to be removed from the Global Magnitsky Act and the Specially Designated Nationals and Blocked Persons List. Signed by Judge Beryl A. Howell on January 8, 2025. (lcbah1) (Entered: 01/08/2025) |
| 02/18/2025 | 14 | Consent MOTION for Briefing Schedule *and Status Report* by ANDREA GACKI, OFFICE OF FOREIGN ASSETS CONTROL OF THE UNITED STATES DEPARTMENT OF THE TREASURY, JANET L. YELLEN. (Attachments: # 1 Text of Proposed Order)(Snyder, Cassandra) (Entered: 02/18/2025) |

4

| 02/18/2025 | 15 | STATUS REPORT by ANDREA GACKI, OFFICE OF FOREIGN ASSETS CONTROL OF THE UNITED STATES DEPARTMENT OF THE TREASURY, JANET L. YELLEN. (See docket entry 14 to view document). (mg) (Entered: 02/19/2025) |
|---|---|---|
| 02/19/2025 | | MINUTE ORDER (paperless) GRANTING plaintiffs' 14 Consent Motion; and ISSUING, upon consideration of the parties' 14 Joint Status Report, the following SCHEDULING ORDER:<br><br>(1) By February 24, 2025, plaintiff shall file an amended complaint;<br><br>(2) By April 25, 2025, defendants shall file an answer, or otherwise respond, to the amended complaint;<br><br>(3) By May 26, 2025, defendants shall provide plaintiff with the administrative record;<br><br>(4) By June 27, 2025, plaintiff shall file his motion for summary judgment;<br><br>(5) By July 28, 2025, defendants shall file their combined motions for summary judgment and opposition to plaintiff's motion for summary judgment;<br><br>(6) By August 22, 2025, plaintiff shall file his combined reply in support of his motions for summary judgment and opposition to defendants' motion for summary judgment;<br><br>(7) By September 19, 2025, defendants shall file their reply in support of their motion for summary judgment.<br><br>Signed by Judge Beryl A. Howell on February 19, 2025. (lcbah1) (Entered: 02/19/2025) |
| 02/20/2025 | | Set/Reset Deadlines: Plaintiff Amended Complaint due by 2/24/2025. Defendant Answer Or Otherwise Response To The Amended Complaint due by 4/25/2025. Defendant To Provide Administrative Record To The Plaintiff due by 5/26/2025. Plaintiff Motion For Summary Judgment due by 6/27/2025. Defendants Combined Motions For Summary Judgment And Opposition To Plaintiff's Motion For Summary Judgment due by 7/28/2025. Plaintiff Combined Reply In Support Of Motions For Summary Judgment And Opposition To Defendants' Motion For Summary Judgment due by 8/22/2025. Defendants Reply In Support Of Motion For Summary Judgment due by 9/19/2025. (mac) (Entered: 02/20/2025) |
| 02/24/2025 | 16 | AMENDED COMPLAINT *Second* against All Defendants filed by LUIS MIGUEL MARTINEZ MORALES. (Attachments: # 1 Affidavit)(Schacht, Alexei) (Entered: 02/24/2025) |
| 04/18/2025 | 17 | Consent MOTION Waive Obligation to Answer Complaint re 16 Amended Complaint by SCOTT BESSENT, ANDREA GACKI, OFFICE OF FOREIGN ASSETS CONTROL OF THE UNITED STATES DEPARTMENT OF THE TREASURY, LISA M. PALLUCONI, JANET L. YELLEN. (Attachments: # 1 Text of Proposed Order)(Snyder, Cassandra) (Entered: 04/18/2025) |
| 04/22/2025 | | MINUTE ORDER (paperless) GRANTING defendants' 17 Consent Motion to Waive Answer; and DEFERRING the deadline for defendants to file their answer, pending |

| | | |
|---|---|---|
| | | further order from the Court. Signed by Judge Beryl A. Howell on April 22, 2025. (lcbah1) (Entered: 04/22/2025) |
| 05/23/2025 | 18 | NOTICE *of Production of the Administrative Record* by SCOTT BESSENT, OFFICE OF FOREIGN ASSETS CONTROL OF THE UNITED STATES DEPARTMENT OF THE TREASURY, LISA M. PALLUCONI (Attachments: # 1 Exhibit A − AR Index, # 2 Exhibit B − AR Certification)(Snyder, Cassandra) (Entered: 05/23/2025) |
| 07/08/2025 | | DISCHARGED PURSUANT TO MINUTE ORDER FILED ON 7/10/2025.....MINUTE ORDER (paperless) ORDERING plaintiff to SHOW CAUSE, by July 11, 2025, why this case should not be dismissed for failure to prosecute, pursuant to D.D.C. Local Civil Rule LCvR 83.23. Plaintiff has yet to lodge his motion for summary judgment, which was due on June 27, 2025, *see* Min. Order (Feb. 19, 2025). Signed by Judge Beryl A. Howell on July 8, 2025. (lcbah1) (Entered: 07/08/2025) |
| 07/10/2025 | 19 | Joint MOTION for Extension of Time to *File Motions* by LUIS MIGUEL MARTINEZ MORALES. (Attachments: # 1 Text of Proposed Order)(Schacht, Alexei) (Entered: 07/10/2025) |
| 07/10/2025 | | MINUTE ORDER (paperless), upon consideration of plaintiff's 19 Consent Motion to Extend Deadlines ("Consent Motion"), DISCHARGING the Court's July 9, 2025, Order to Show Cause; GRANTING defendant's Consent Motion; MODIFYING the Court's scheduling order, see Min. Order (Feb. 19, 2025), as follows: (1) by September 5, 2025, plaintiff shall file his motion for summary judgment; (2) by October 6, 2025, defendants shall file their combined motions for summary judgment and opposition to plaintiff's motion for summary judgment; (3) by November 3, 2025, plaintiff shall file his combined reply in support of his motions for summary judgment and opposition to defendants' motion for summary judgment; and (4) by December 1, 2025, defendants shall file their reply in support of their motion for summary judgment; and CAUTIONING plaintiff that he should seek modification of the scheduling order before missing filing deadlines set by the Court. Signed by Judge Beryl A. Howell on July 10, 2025. (lcbah1) (Entered: 07/10/2025) |
| 09/04/2025 | 20 | NOTICE OF SUBSTITUTION OF COUNSEL by Samuel Bean on behalf of All Defendants Substituting for attorney Cassandra Snyder (Bean, Samuel) (Entered: 09/04/2025) |
| 09/05/2025 | 21 | MOTION for Summary Judgment by LUIS MIGUEL MARTINEZ MORALES. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B)(Schacht, Alexei) (Entered: 09/05/2025) |
| 09/08/2025 | 22 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by LUIS MIGUEL MARTINEZ MORALES (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Exhibit B)(Schacht, Alexei) (Entered: 09/08/2025) |
| 09/08/2025 | 23 | NOTICE of Proposed Order by LUIS MIGUEL MARTINEZ MORALES re 21 MOTION for Summary Judgment (Schacht, Alexei) (Entered: 09/08/2025) |
| 09/10/2025 | | MINUTE ORDER (paperless) GRANTING plaintiff's 22 Motion for Sealing. To effectuate this order, the Clerk of the Court is DIRECTED to file under seal plaintiff's Motion for Summary Judgment and the accompanying three attachments, ECF Nos. 21 to 21−3; the plaintiff is DIRECTED to file, by September 12, 2025, a public version of the Motion for Summary Judgment (ECF No. 21), Memorandum (ECF No. 21−1), |

6

| | | |
|---|---|---|
| | | Exhibit A (ECF No. 21−2), and Exhibit B (ECF No. 21−3), with all confidential information redacted. Signed by Judge Beryl A. Howell on September 10, 2025. (lcbah1) (Entered: 09/10/2025) |
| 09/11/2025 | | Set/Reset Deadlines: Plaintiff Public (Redacted) Version Of The Motion For Summary Judgment (ECF No. 21), Memorandum (ECF No. 21−1), Exhibit A (ECF No. 21−2), and Exhibit B (ECF No. 21−3) due by 9/12/2025. (mac) (Entered: 09/11/2025) |
| 09/11/2025 | 24 | MOTION for Summary Judgment by LUIS MIGUEL MARTINEZ MORALES. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B)(Schacht, Alexei) (Entered: 09/11/2025) |
| 11/19/2025 | 25 | NOTICE of Appearance by Sarah Suwanda on behalf of All Defendants (Suwanda, Sarah) (Entered: 11/19/2025) |
| 11/19/2025 | 26 | Consent MOTION for Extension of Time to File Response/Reply by SCOTT BESSENT, OFFICE OF FOREIGN ASSETS CONTROL OF THE UNITED STATES DEPARTMENT OF THE TREASURY, LISA M. PALLUCONI. (Attachments: # 1 Proposed Order)(Suwanda, Sarah) (Entered: 11/19/2025) |
| 11/19/2025 | | MINUTE ORDER (paperless) GRANTING defendants' 26 Consent Motion for Extension of Time and MODIFYING the SCHEDULING ORDER as follows: (1) by December 22, 2025, defendants shall file their combined motions for summary judgment and opposition to plaintiff's motion for summary judgment; (2) by January 26, 2026, plaintiff shall file his combined reply in support of his motions for summary judgment and opposition to defendants' motion for summary judgment; and (3) by February 23, 2026, defendants shall file their reply in support of their motion for summary judgment. Signed by Judge Beryl A. Howell on November 19, 2025. (lcbah1) (Entered: 11/19/2025) |
| 11/19/2025 | | Set/Reset Deadlines: Defendants' Cross Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment due by 12/22/2025. Plaintiff's Reply to his Motion for Summary Judgment and Response to Defendants' Cross Motion for Summary Judgment due by 1/26/2026. Defendants' Reply to their Cross Motion for Summary Judgment due by 2/23/2026. (zalh) (Entered: 11/19/2025) |
| 12/22/2025 | 27 | Cross MOTION for Summary Judgment *and Opposition to Plaintiff's Motion for Summary Judgment (Combined)* by SCOTT BESSENT, OFFICE OF FOREIGN ASSETS CONTROL OF THE UNITED STATES DEPARTMENT OF THE TREASURY, LISA M. PALLUCONI. (Attachments: # 1 Mem. in Support of Defs.' Cross−Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment, # 2 Proposed Order)(Suwanda, Sarah) (Entered: 12/22/2025) |
| 12/22/2025 | 29 | Memorandum in opposition to re 24 MOTION for Summary Judgment filed by SCOTT BESSENT, OFFICE OF FOREIGN ASSETS CONTROL OF THE UNITED STATES DEPARTMENT OF THE TREASURY, LISA M. PALLUCONI. (See docket entry 27 to view document) (mg) (Entered: 01/28/2026) |
| 01/25/2026 | 28 | RESPONSE re 27 Cross MOTION for Summary Judgment *and Opposition to Plaintiff's Motion for Summary Judgment (Combined)* filed by LUIS MIGUEL MARTINEZ MORALES. (Attachments: # 1 Certificate of Service)(Schacht, Alexei) (Entered: 01/25/2026) |
| 01/25/2026 | 30 | REPLY to opposition to motion re 24 Motion for Summary Judgment filed by LUIS MIGUEL MARTINEZ MORALES. (See docket entry 28 to view document) (mg) |

| | | |
|---|---|---|
| | | (Entered: 01/28/2026) |
| 02/23/2026 | 31 | REPLY to opposition to motion re 27 Motion for Summary Judgment, filed by SCOTT BESSENT, ANDREA M. GACKI, OFFICE OF FOREIGN ASSETS CONTROL OF THE UNITED STATES DEPARTMENT OF THE TREASURY, LISA M. PALLUCONI, JANET L. YELLEN. (Suwanda, Sarah) (Entered: 02/23/2026) |
| 02/23/2026 | 32 | NOTICE *of Classified and Privileged Lodging* by SCOTT BESSENT, OFFICE OF FOREIGN ASSETS CONTROL OF THE UNITED STATES DEPARTMENT OF THE TREASURY, LISA M. PALLUCONI (Suwanda, Sarah) (Entered: 02/23/2026) |
| 03/09/2026 | 33 | JOINT APPENDIX by LUIS MIGUEL MARTINEZ MORALES. (Schacht, Alexei) (Entered: 03/09/2026) |
| 07/24/2026 | 34 | ORDER DENYING plaintiff's 24 Motion for Summary Judgment, and GRANTING defendants' 27 Cross−Motion for Summary Judgment. See Order for further details. The Clerk of the Court is directed to close this case. Signed by Judge Beryl A. Howell on July 24, 2026. (lcbah1) (Entered: 07/24/2026) |
| 07/24/2026 | 35 | MEMORANDUM OPINION regarding plaintiff's 24 Motion for Summary Judgment, and defendants' 27 Cross−Motion for Summary Judgment. Signed by Judge Beryl A. Howell on July 24, 2026. (lcbah1) (Entered: 07/24/2026) |
| 08/10/2026 | 36 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 34 Order on Motion for Summary Judgment,,,,, 35 Memorandum & Opinion by LUIS MIGUEL MARTINEZ MORALES. Filing fee $ 605, receipt number ADCDC−12603462. Fee Status: Fee Paid. (Schacht, Alexei) (Entered: 08/10/2026) |

8

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
_____

LUIS MIGUEL MARTINEZ MORALES,

               Plaintiff,

       vs.                            Civil Action No. 24-2519 (BAH)

UNITED STATES DEPARTMENT OF THE
TREASURY, OFFICE OF FOREIGN
ASSETS CONTROL, et al.,                Judge Beryl A. Howell

               Defendants.

_____

**NOTICE OF APPEAL**

Notice is hereby given this 10th day of August, 2026, that Plaintiff hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the Order and Memorandum Opinion of this Court, both entered on the 24th day of July, 2026, denying Plaintiff's motion for summary judgment and granting Defendants' cross-motion for summary judgment (Docket Documents numbered 34 and 35).

Alexei Schacht

Attorney for the Plaintiff
Law Office of Alexei Schacht
123 West 94th Street
New York, New York 10025
(646)729-8180
alexei@schachtlaw.net

9

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LUIS MIGUEL MARTINEZ MORALES,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL, *et al.*,<br><br>Defendants. | Civil Action No. 24-2519 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

On December 20, 2017, the President, pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.*, declared that "serious human rights abuse and corruption around the world" constituted a national emergency, and authorized economic sanctions against foreign individuals and entities meeting certain criteria to counteract the harmful activities of foreign corruption. *See* Blocking the Property of Persons Involved in Serious Human Rights Abuse or Corruption, Exec. Order No. 13818, 82 Fed. Reg. 60839 (Dec. 20, 2017) ("E.O. 13818" or the "Executive Order"). Pursuant to E.O. 13818, the Department of the Treasury's Office of Foreign Assets Control ("OFAC") designated plaintiff, a former high-ranking official in the Guatemalan government, for engaging in sanctionable conduct that included soliciting kickbacks and colluding with other Guatemalan government officials to illegally award contracts to favored bidders outside of the Guatemalan government's formal procurement system. Plaintiff challenges his designation under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, seeking a declaration that his continued inclusion on the sanctions list is unlawful, as well as a writ of mandamus ordering OFAC to remove him from the list. *See* Second Amended Complaint ("SAC") ¶¶ 32-37, ECF No. 16 (bringing one count under the APA for "unreasonably denying the removal

1

of Martinez" from the sanctions list); *id.* at 11 (Prayer for Relief).  Parties have cross-moved for summary judgment.  For the reasons below, plaintiff's motion for summary judgment is denied, and defendants' cross-motion for summary judgment is granted.

## I.   BACKGROUND

The factual background and procedural history of this case are summarized *seriatim*.

### A.   The International Emergency Economic Powers Act ("IEEPA")

The International Emergency Economic Powers Act was enacted in 1977 and granted the President broad authority to initiate economic sanctions against individuals and entities.  Under IEEPA, the President must first declare a national emergency "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States." 50 U.S.C. § 1701(a).  Once a national emergency is declared, IEEPA authorizes the President to "regulate . . . prevent or prohibit, any . . . transfer . . . of . . . property, subject to the jurisdiction of the United States."  *Id.* § 1702(a)(1)(B).

On December 20, 2017, the President issued E.O. 13818, finding "human rights abuse and corruption," stemming "in whole or in substantial part, outside the United States," "have reached such scope and gravity that they threaten the stability of international political and economic systems."  E.O. 13818, Preamble.  The President declared that "serious human rights abuse and corruption around the world constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States."  *Id.*  Section 1(a) of E.O. 13818 authorizes the designation of foreign persons or entities determined by the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, "to be a current or former government official, or a person acting for or on behalf of such an official, who is responsible for or complicit in, or has directly or indirectly engaged in . . . corruption, including the

2

misappropriation of state assets, the expropriation of private assets for personal gain, corruption related to government contracts or the extraction of natural resources, or bribery." *Id.* § 1(a)(ii).

The Secretary of the Treasury has delegated his authority under E.O. 13818 to OFAC. 31 C.F.R. § 583.106. OFAC maintains a list of individuals or entities whose assets are blocked through the Specially Designated Nationals and Blocked Persons List ("SDN List"). *See* OFAC, SDN List, https://perma.cc/2DKF-PRVB.

A blocked person "may submit a petition for administrative reconsideration . . . in order to seek removal . . . from the List of Specially Designated Nationals and Blocked Persons." 31 C.F.R. § 501.807. As part of this request for reconsideration, the blocked person "may submit arguments or evidence that the person believes establishes that insufficient basis exists for the sanction," as well as propose "remedial steps . . . which the person believes would negate the basis for sanction." *Id.* § 501.807(a). Upon review of the submitted information by the blocked person or entity, OFAC may, in its discretion, "request clarifying, corroborating, or other additional information." *Id.* § 501.807(b). After conducting a review of the blocked person's request for reconsideration, OFAC will provide "a written decision to the [blocked] person." *Id.*

## B.    Factual Background

On December 1, 2023, OFAC invoked its authority under E.O. 13818 to sanction plaintiff "for being a foreign person who is a current or former government official, or person acting for or on behalf of such an official, who is responsible for or complicit in, or who has directly or indirectly engaged in, corruption, including the misappropriation of state assets, the expropriation of private assets for personal gain, corruption related to government contracts or the extraction of natural resources, or bribery." Admin. Record ("AR"), 0036, ECF No. 33. In announcing the sanction, the Department of the Treasury ("Treasury") issued a press release explaining that plaintiff—"the former head of the now-defunct Centro de Gobierno, a powerful quasi-cabinet level agency created

3

by [the former] Guatemalan President Alejandro Giammattei"—used his position as "one of the most powerful unelected officials" in the Guatemalan government for personal benefit. AR 0035-36 (U.S. Department of the Treasury website, Press Release, December 1, 2023). In particular, Treasury emphasized that plaintiff engaged in the following sanctionable conduct: (1) colluding to illegally award contracts to favored bidders outside of the Guatemalan government's formal procurement system; (2) foregoing the bidding process and securing government contracts for companies in which he had a financial interest; and (3) soliciting "large kickbacks to facilitate the purchase [of 16 million doses] of the Russian Sputnik V [COVID-19] vaccine[] by the Government of Guatemala." AR 0036. Treasury further explained that despite President Giammattei's shuttering of Centro de Gobierno, which followed from "backlash to Martinez' rising power in the government," plaintiff remained "one of the most influential individuals in the Giammattei administration." AR 0035-36. Accordingly, Treasury announced that the designation of plaintiff "builds on the [U.S.] Administration's efforts to address corruption as a root cause of irregular migration through the northern Central America region," noting that "[c]orrupt and anti-democratic acts, including those that threaten the integrity of an orderly transition of power in Guatemala, undermine Guatemala's democratic institutions and threaten the stability of Guatemala and the region as a whole." AR 0035.

Four days after the announcement of this sanction, on December 5, 2023, plaintiff, through counsel, submitted a letter to OFAC seeking administrative reconsideration of his inclusion on the SDN list. AR 0032-0034 (Excerpts of Letter from Schacht Law to OFAC re: Delisting Petition for Luis Miguel Martinez Morales, December 5, 2023). In that letter, plaintiff argued that the announcement on December 1, 2023 designating him "only addresse[d] allegedly old misconduct and only offer[ed] one specific instance if [sic] supposed corruption, the solicitation of kickbacks

from Russia or a Russian entity," for which plaintiff maintained he "was investigated and cleared by the [sic] Guatemala's special anti-corruption agency." *Id.* (emphasis omitted). Plaintiff's counsel made five additional submissions to OFAC, on December 28, 2023, March 28, 2024, April 18, 2024, June 13, 2024, and July 8, 2024, arguing for plaintiff's delisting and submitting evidence in support thereof. AR 0001 (Denial Notification Letter, February 7, 2025). Two of those submissions—on March 28 and July 8, 2024—were in response to questionnaires from OFAC seeking "detailed, narrative responses" to its questions about plaintiff's public and private sector activities; his relationships with various high-level Guatemalan government individuals; his income and assets, both U.S. and non-U.S.; any participation in the Government of Guatemala's purchase of the Sputnik V COVID-19 vaccines; his plans for financially supporting himself since leaving government; and any interactions he has had with the U.S. Department of Justice and the Federal Bureau of Investigation and any legal proceedings against him. *See* AR 0042-0046 (Letter, OFAC to Schacht Law, Questionnaire 1, February 23, 2024); AR 0048-0051 (Letter, Schacht Law to OFAC, Responses to Questionnaire 1, March 28, 2024); AR 0062-0064 (Letter, OFAC to Schacht Law, Questionnaire 2, June 14, 2024).

On February 7, 2025, OFAC denied the reconsideration request, explaining in a written decision that plaintiff "has not submitted credible arguments or evidence to establish that an insufficient basis exists for [plaintiff's] designation or that the circumstances resulting in the designation no longer apply." AR 0001 (Denial Notification Letter, February 7, 2025). In reaching that decision, OFAC provided the following explanations:

- "OFAC takes at face value that [Plaintiff] has never been charged with a crime . . . and that Guatemala's special anti-corruption agency dismissed the investigation into [Plaintiff] related to the Government of Guatemala's purchase of the Sputnik V COVID-19 vaccines. However, any decisions made by law enforcement, prosecutors, or judicial officials in Guatemala, the United States, or

any other jurisdiction, are not conclusive with respect to the ability and authority to enact U.S. sanctions designations under E.O. 13818."

- With respect to Plaintiff's involvement in the Sputnik V COVID-19 vaccine purchase, "OFAC determined that the arguments submitted by [Plaintiff] do not refute the information available to OFAC."

- "OFAC maintains reason to believe [Plaintiff] meets the criteria for designation . . . because of his involvement in other government corruption in Guatemala, both before and after his designation."

- Plaintiff "has made no attempt or effort to propose [remedial] steps he would be willing to take."

- Plaintiff "has failed to provide sufficient information to demonstrate a change in circumstances such that the basis for designation would no longer apply."

- "[T]he limited information provided to OFAC by [Plaintiff] does not suggest a credible commitment to addressing the conduct that formed the basis for his designation."

- Plaintiff "has not been forthcoming in his responses to OFAC's questions, including by failing to provide current supporting documentation requested by OFAC, instead providing public financial disclosures only from 2020 and 2021."

AR 0003.

OFAC concluded that it "maintains reason to believe [plaintiff] meets the criteria for designation . . . both before and after his designation."  AR 0003.

C.    **Procedural Background**

On September 2, 2024, before OFAC issued its denial of plaintiff's reconsideration request, a request which at that point had been pending for over eight months, plaintiff initiated this lawsuit against Treasury and its Secretary in his official capacity, and OFAC and its Acting Director in her official capacity (collectively, "defendants"), challenging, under the APA, defendants' "unreasonable delay" in "the removal of Martinez" from the sanctions list and in providing a "written response to Martinez [sic] request that he be removed" from the sanctions list.  Compl. ¶¶ 28-33, ECF No. 1.  Plaintiff subsequently amended his complaint twice, with the operative

6

15

second amended complaint filed on February 24, 2025, *after* OFAC issued its denial of plaintiff's reconsideration request on February 7, 2025.  *See* First Amended Complaint, ECF No. 2; SAC.

In the operative second amended complaint, plaintiff challenges, under the APA, defendants' continued designation of him and denial of his request to be delisted, seeking a declaration that his "continued inclusion . . . on the SDN List is unlawful" and an issuance of "a writ of mandamus ordering OFAC to remove [him] from the SDN List."  SAC at 11 (Prayer for Relief).  In accordance with the parties' proposed briefing schedule, *see* Status Report and Consent Mot. for Entry of a Schedule, ECF No. 14, a scheduling order for dispositive briefing was entered on February 19, 2025.  *See* Min. Order (Feb. 19, 2025).

On July 8, 2025, after missing the June 27, 2025 deadline to file his motion for summary judgment, per the Scheduling Order, plaintiff was ordered to show cause why this case should not be dismissed for failure to prosecute.  Min. Order (Jul. 8, 2025).  In response, plaintiff filed a consent motion to extend the deadline, Pl.'s Consent Mot. to Extend Deadlines for Mots., ECF No. 19, which was granted, and the show cause order was discharged, Min. Order (Jul. 10, 2025).

Subsequently, on September 11, 2025, plaintiff moved for summary judgement on all claims, *see* Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF No. 24, to which defendants responded with a cross motion for summary judgement on all claims, *see* Defs.' Cross Mot. Summ. J. ("Defs.' Mot."), ECF No. 27.  Following the completion of briefing, the motions are ripe for review.  *See* Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem."), ECF No. 24-1; Defs.' Mem. Supp. Defs.' Cross-Mot. Summ. J. & Defs.' Opp'n Pl.'s Mot. Summ. J. ("Defs.' Mem."), ECF No. 27-1; Pl.'s Opp'n Defs.' Cross-Mot. Summ. J. & Reply Supp. Pl.'s Mot. Summ. J. ("Pl.'s Reply"), ECF No. 28; Defs.' Reply Supp. Defs.' Cross-Mot. Summ. J. ("Defs.' Reply"), ECF No. 31.

7

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment may be granted when the court finds "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a), (e)(3).  In APA cases, the first part of the Rule 56 summary judgment standard regarding the absence of disputed material facts is irrelevant, since "the district judge sits as an appellate tribunal" and "[t]he entire case on review is a question of law."  *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (citation omitted).  As such, "the complaint, properly read, actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action."  *Id.* (internal quotation marks omitted) (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)).  Consequently, "[g]enerally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions."  *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996); *see also Lacson v. U.S. Dep't of Homeland Sec.*, 726 F.3d 170, 171 (D.C. Cir. 2013) (noting that, in APA cases, "determining the facts is generally the agency's responsibility, not ours").

Under the APA, a reviewing court must set aside a challenged agency action that is found to be, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "Agency action is arbitrary and capricious 'if the agency has relied on factors which [law] has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency.'"  *Mayo v. Reynolds*, 875 F.3d 11, 19 (D.C. Cir. 2017) (alteration in original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  A

court engaged in arbitrary and capricious review "must not substitute its own judgment for that of the agency," and "ordinarily uphold[s] an agency's decision so long as the agency 'examined the relevant data and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made.'" *Animal Legal Def. Fund, Inc. v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017) (citation modified) (quoting *State Farm*, 463 U.S. at 43).

## III.   DISCUSSION

Although plaintiff's complaint alleges only one count under the APA for "failure to delist," SAC at 8, arguing that "OFAC has violated, and continues to violate, 5 U.S.C. §§ 555 [regarding notice] and 706 [regarding judicial review of agency action] by unreasonably denying the removal of Martinez from the SDN List," *id.* ¶ 36, plaintiff's briefs in support of his Motion for Summary Judgment raise several claims.  In the sections below, plaintiff's claim that defendants exceeded their authority under IEEPA is discussed first, followed by plaintiff's challenge to OFAC's notice under the Fifth Amendment's due process clause and the APA. Finally plaintiff's argument that defendants acted arbitrarily and capriciously in designating plaintiff under E.O. 13818 is discussed.[1]

### A.   OFAC's Designation of Plaintiff Complies with IEEPA

Plaintiff argues that "defendants impermissibly exercised their authority under IEEPA and acted in excess of statutory jurisdiction when they designated [him] under E.O. 13818."  Pl.'s Mem. at 8 (capitalization altered).  This argument is unconvincing.

To begin, as defendants point out, nowhere in plaintiff's second amended complaint does plaintiff allege that defendants exceeded the scope of IEEPA by designating him pursuant to E.O.

---

[1]   Each exhibit and submission from the parties in support of and in opposition to the pending motions has been reviewed, but only those exhibits necessary to provide context for resolution of the pending motions are cited herein.

13818. *See* Defs.' Mem. at 11. Plaintiff's sole claim in his operative complaint is that OFAC has "unreasonably den[ied] the removal of Martinez from the SDN List." SAC ¶ 36. Indeed, plaintiff's operative complaint never even mentions IEEPA. For this reason alone, plaintiff's unpleaded IEEPA claim can be dismissed. *See Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 n.36 (3d Cir. 2019) (affirming dismissal of two claims on the ground that "[t]he Amended Complaint . . . contain[ed] no allegations regarding either of those claims"); *O'Rourke Marine Servs. L.P., L.L.P. v. M/V COSCO HAIFA*, 730 F. App'x 89, 91-92 (2d Cir. 2018) ("[Plaintiff] argues that it should prevail on a theory of unjust enrichment, even though it never pleaded such a claim in its complaint, but instead mentioned such a theory for the first time in its motion for summary judgment. . . . The District Court was entitled to disregard such unpleaded claims.").

Notwithstanding plaintiff's failure to adequately plead an IEEPA claim in his complaint, this claim also fails on the merits. Plaintiff contends that OFAC's designation of plaintiff exceeded defendants' delegated authority under IEEPA, because "[n]o President has declared a national emergency with respect to alleged local corruption in Guatemala." *See* Pl.'s Mem. at 9-10. In plaintiff's view, E.O. 13818 does not apply to him, because "Guatemala is not identified in E.O. 13818," and because E.O. 13818 excludes "small-scale local corruption that would in no way affect the United State [sic]." Pl.'s Mem. at 9.

Plaintiff's arguments that E.O. 13818 does not apply to Guatemala, or to "small-scale local corruption," are flatly contradicted by the text of the Executive Order, in which the president declared in the Preamble as follows:

> I therefore determine that serious human rights abuse and corruption around the world constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States, and I hereby declare a national emergency to deal with that threat.

E.O. 13818, Preamble.

10

19

As is clear from the broadly worded text of the Executive Order, the president unequivocally "declare[d] a national emergency to deal with" the threat of "corruption *around the world*," E.O. 13818 (emphasis added), which would include within its ambit the country of Guatemala. The text of the Executive Order also contains no language limiting the scope of the declared emergency to exclude small-scale, local corruption. Indeed, elsewhere in the Preamble, E.O. 13818 makes clear that the "United States seeks to impose tangible and significant consequences on those who . . . engage in corruption" because corruption "undermine[s] the values that form an essential foundation of stable, secure, and functioning societies; ha[s] devastating impacts on individuals; weaken[s] democratic institutions; degrade[s] the rule of law; perpetuate[s] violent conflicts; facilitate[s] the activities of dangerous persons; and undermine[s] economic markets." E.O. 13818, Preamble. *See also* AR 0035 (U.S. Department of the Treasury website, Press Release, December 1, 2023) (finding that sanctioning plaintiff "underscores the corrosive impact of corruption on the public's trust in government institutions"). Nothing in the Executive Order excludes Guatemala from "the world," or delineates between "local" and "nonlocal" corruption. Put simply, defendants correctly state that, "the Executive Order seeks to deal with the threat of corruption occurring outside the United States, full stop." Defs.' Mem. at 13.

To the extent plaintiff questions the President's judgment in declaring a national emergency stemming from foreign corruption and challenges the scope of E.O. 13818, that too fails. *See* Pl.'s Mem. at 10 (arguing that "IEEPA provides that the President may only use its emergency economic powers pursuant to a declared national emergency and only to address the specific threat for which such emergency was declared"); Pl.'s Reply at 2 (asserting that Guatemala "has a long history of graft" so "there is absolutely nothing 'unusual or extraordinary' about

11

20

corruption in Guatemala").  IEEPA confers broad discretion on the President to identify and deal with any threat that he deems "unusual and extraordinary . . . to the national security, foreign policy, or economy of the United States," so long as the threat "has its source in whole or substantial part outside the United States . . .  [and] if the President declares a national emergency with respect to such threat."  50 U.S.C. § 1701(a).  The Supreme Court has long maintained that IEEPA "indicat[es] congressional acceptance of a broad scope for executive action" and "delegates broad authority to the President to act in times of national emergency with respect to property of a foreign country."  *Dames & Moore v. Regan*, 453 U.S. 654, 677 (1981).  The D.C. Circuit has similarly reiterated that IEEPA "clothes the President with extensive authority" to "investigate, regulate, or prohibit transactions in foreign exchange, banking transfers, and importation or exportation of currency or securities by persons or with respect to property, subject to the jurisdiction of the United States."  *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 159 (D.C. Cir. 2003).  Indeed, as recently summarized by another judge on this Court, "IEEPA does not limit the President to sanctioning only those who have contributed to a threat.  Nor does the statute require that the exercised authority effectively deal with the threat—say, by directly sanctioning individuals or entities actively contributing to the declared emergency.  Nor, for that matter, did Congress subject the President's authority to a proportionality requirement that might insist on a reasonable fit between the means . . . ."  *Vassiliades v. Rubio*, 792 F. Supp. 3d 1, 19 (D.D.C. 2025) (TJK) (citations and emphasis omitted).  Good policy reasons may exist for impositions of such limits on the power granted to the President under IEEPA, but Congress has not chosen to impose them, and courts, though standing ready to enforce statutory limits, cannot make them up. Plaintiff tellingly cites no authority upending "settled" law as to "the President's

12

'sweeping' and 'broad' authority under IEEPA." *Rahmani v. Yellen*, No. 24-cv-0285, 2024 WL 1701681, at *11 (D.D.C. Apr. 19, 2024) (citation omitted).

Plaintiff also, in its reply brief, injects several new arguments neither presented before the agency, nor alleged in the complaint or opening brief. *See* Pl.'s Reply at 2-3 (asserting that the Justice Department and the President no longer view foreign corruption as a priority or threat to the United States); *id.* at 3 (criticizing that "neither the Treasury nor the Justice Departments [sic] acts when there is evidence in plain sight of foreign corruption when that corruption is related to powerful American people," linking to an article titled "Donald Trump's New Tower of Grift"); *id.* (contending that, "according to President Trump he has solved the migration crisis," so "the justification . . . that Guatemalan corruption is a cause of the illegal migration crisis . . . now fails"); *id.* (questioning "President Biden's mental capacity" when "the listing itself was made in December of 2023"). These arguments, advanced for the first time in plaintiff's reply brief, are "forfeited [as they are] not asserted in a timely manner." *Allen v. District of Columbia*, No. 00-cv-591, 2021 WL 6065785, at *2 (D.D.C. Dec. 22, 2021), *aff'd*, No. 21-7142, 2022 WL 1278925 (D.C. Cir. Apr. 28, 2022); *see In re Sealed Case*, 77 F.4th 815, 829 (D.C. Cir. 2023) ("It is well established that an argument first presented in a reply brief before the district court is forfeited."). Moreover, plaintiff's last ditch arguments doubly fail because they rely on evidence—news articles and a YouTube video—not found in the administrative record. *See* 5 U.S.C. § 706 ("[T]he [C]ourt shall review the whole record or those parts of it cited by a party . . . ."); *see also CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014). ("It is black-letter administrative law that in an [APA] case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision." (internal quotation marks omitted) (quoting *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013))).

13

Accordingly, summary judgment is granted to defendants as to plaintiff's claim, asserted only in briefing, that defendants exceeded the scope of IEEPA by designating plaintiff pursuant to E.O. 13818.

**B.     OFAC's Notice Regarding Plaintiff's Continued Designation Complies with Due Process and the APA**

Plaintiff also objects that OFAC's redacted information within the administrative record "conceals from him even the slightest bit of information that would allow him to defend himself." Pl.'s Mem. at 12. These redactions in the administrative record, according to plaintiff, violate both his right to due process under the Fifth Amendment and the notice requirement under the APA. *See id.* at 11-12 (arguing that "due process" "requires that designated persons have a full and complete understanding of the reasons for their designation"); *id.* at 14 (arguing that "Defendants have violated the APA's notice requirement"). Although this situation may, understandably, be frustrating to plaintiff, these arguments are unpersuasive for several reasons.

First, and bluntly put, plaintiff's challenge to the redactions in the administrative record has not been properly pleaded. The words "due process" or "Fifth Amendment" appear nowhere in plaintiff's operative second amended complaint, nor does that complaint or any prior complaints filed in this case, ever assert that more notice is required under the APA. Again, plaintiff alleges only that OFAC has "unreasonably den[ied] the removal of Martinez from the SDN List." SAC ¶ 36. Plaintiff's failure to plead insufficient process or notice is further underscored by the relief sought in plaintiff's second amended complaint, which does not ask for more process or access to unredacted information, but rather for a declaration that "continued inclusion of Martinez on the SDN List is unlawful" and an issuance of "a writ of mandamus ordering OFAC to remove Martinez from the SDN List." *Id.* at 11 (Prayer for Relief). Accordingly, as with plaintiff's unpleaded

14

IEEPA claim, plaintiff's similarly unpleaded challenges to the redactions in the administrative record can also be dismissed.  *See Mammana*, 934 F.3d at 373 n.36.

In any event, plaintiff's due process claim and notice claim under the APA fail on the merits.  The unclassified, unredacted portions of the administrative record provide ample notice to plaintiff as to the basis for plaintiff's designation.  Defendants, offering some examples, note that Treasury's press release and Federal Register Notice explicitly provided the following bases for Plaintiff's designation:

- Plaintiff has been "[d]esignated pursuant to section 1(a)(ii)(B)(1) of Executive Order 13818 . . . for being a foreign person who is a current or former government official, or a person acting for or on behalf of such an official, who is responsible for or complicit in, or has directly or indirectly engaged in, corruption, including the misappropriation of state assets, the expropriation of private assets for personal gain, corruption related to government contracts or the extraction of natural resources, or bribery." A.R. 0030; *see also* A.R. 0255 (Plaintiff "is responsible for or complicit in, or has directly or indirectly engaged in, corruption, including the misappropriation of state assets, the expropriation of private assets for personal gain, corruption related to government contracts or the extraction of nation resources, or bribery.").

- Plaintiff colluded with other Guatemalan government officials to illegally award contracts to favored bidders outside of the Guatemalan government's formal procurement system. A.R. 0036.

- Plaintiff and fellow co-conspirators utilized antiquated procurement law to forgo the bidding process and secure government contracts for companies in which he had a financial interest. A.R. 0036.

- Plaintiff solicited large kickbacks to facilitate the purchase of the Russian Sputnik V COVID-19 vaccine by the Guatemalan government. Guatemala's special anti-corruption agency investigated Plaintiff for his role in a payment tied to the purchase of 16 million doses of the Russian Sputnik V vaccine by the Guatemalan government. A.R. 0036.

Defs.' Mem. at 18-19.

Defendants further note that OFAC's three-page letter denying plaintiff's request for reconsideration was supported by an evidentiary memorandum—all within the administrative

record and available to plaintiff—and that memorandum is replete with unclassified disclosures explaining the reason for the listing. As detailed in that evidentiary memorandum, these reasons include:

- "OFAC takes at face value that [Plaintiff] has never been charged with a crime . . . and that Guatemala's special anti-corruption agency dismissed the investigation into [Plaintiff] related to the Government of Guatemala's purchase of the Sputnik V COVID-19 vaccines. However, any decisions made by law enforcement, prosecutors, or judicial officials in Guatemala, the United States, or any other jurisdiction, are not conclusive with respect to the ability and authority to enact U.S. sanctions designations under E.O. 13818." A.R. 0003.

- [With respect to Plaintiff's involvement in the Sputnik V COVID-19 vaccine purchase], "OFAC determined that the arguments submitted by [Plaintiff] do not refute the information available to OFAC." A.R. 0003.

- "OFAC maintains reason to believe [Plaintiff] meets the criteria for designation . . . because of his involvement in other government corruption in Guatemala, both before and after his designation." A.R. 0003.

- "Plaintiff has not been truthful with OFAC and has engaged in a pattern of public corruption in Guatemala." A.R. 0012.

- Although Plaintiff maintains that OFAC does not have credible evidence of corruption, he "never asserts that he has not engaged in corruption[.]" A.R. 0025.

- Plaintiff "asserts but has failed to demonstrate that the underlying basis for designation was incorrect, and has failed to demonstrate independently adopted changes in conduct following designation that could support the argument that a change in [Plaintiff's] circumstances has occurred." A.R. 0012.

- Plaintiff "has not been forthcoming in his responses to OFAC's questions, including by failing to provide current supporting documentation requested by OFAC, instead providing public financial disclosures only from 2020 and 2021." A.R. 0003.

- OFAC determined that Plaintiff "has not been forthcoming in [his] March 28, 2024 and July 8, 2024 responses to OFAC's questionnaires to a degree that renders [his] answers lacking in credibility, including by refusing to provide any details regarding his income and assets, activities since leaving government, plans for financially supporting himself, and relationships with Guatemalan government officials." A.R. 0023.

16

- Plaintiff "has failed to take accountability for his actions, express remorse, or propose measures to ensure that he would not be able to engage in corrupt activities in the future." A.R. 0023.

- Plaintiff "has failed to provide sufficient information to demonstrate a change in circumstances such that the basis for designation would no longer apply[.]" A.R. 0003.

- "[T]he limited information provided to OFAC by [Plaintiff] does not suggest a credible commitment to addressing the conduct that formed the basis for his designation." A.R. 0003.

- Plaintiff "has made no attempt or effort to propose [remedial] steps he would be willing to take." A.R. 0003.

Defs.' Mem. at 19-20.

Plaintiff's demand for defendants to divulge additional information that is classified, law-enforcement sensitive, or privileged runs headlong into binding precedent. The D.C. Circuit has repeatedly recognized that the government "has a critical interest in protecting classified, privileged and law enforcement information," *Bello v. Gacki*, 94 F.4th 1067, 1075 (D.C. Cir. 2024), and reiterated that "due process does not require disclosure of classified information supporting official action," *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 319 (D.C. Cir. 2014) (emphasis omitted). *See also, e.g., Fares v. Smith*, 901 F.3d 315, 324 (D.C. Cir. 2018) ("reject[ing] the argument that a designation violates due process simply because the agency rel[ies] upon . . . classified information that [the government] refused to disclose" (alteration in original) (citation omitted)); *Jifry v. FAA*, 370 F.3d 1174, 1183-84 (D.C. Cir. 2004) (holding that the government satisfied the notice requirements of due process by informing foreign pilots that their airmen certificates had been revoked based on the agency's determination that the pilots were a "security threat"); *Holy Land Found.*, 333 F.3d at 164 (rejecting plaintiffs' argument "that due process prevents its designation [by Treasury] based upon classified information to which it has not had access"). Indeed, the D.C. Circuit has reasoned that requiring the disclosure of "classified,

17

privileged and law enforcement information" for which the Executive Branch "has a critical interest in protecting" would impermissibly "compel a breach in the security which the Executive Branch is charged to protect." *Bello*, 94 F.4th at 1075 (alteration accepted) (quoting *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 208-09 (D.C. Cir. 2001)).

Consistent with clear and binding precedent, demands from litigants to access information that is classified or law-enforcement sensitive are routinely rejected. *See, e.g.*, *Bahman Grp. v. Palluconi*, No. 22-cv-3826 (RDM), 2025 WL 3225196, at *9 (D.D.C. Sept. 29, 2025) (finding that due process does not require the disclosure of "privileged law enforcement sensitive information"); *Rahmani v. Yellen*, No. 24-cv-0285 (RC), 2024 WL 1701681, at *17 (D.D.C. Apr. 19, 2024) (noting that although "OFAC has sometimes provided unclassified summaries of the classified portion of the administrative record," it is not required to do so); *Rakhimov v. Gacki*, No. 19-cv-2554 (JEB), 2020 WL 1911561, at *7 (D.D.C. Apr. 20, 2020) (declining to "impose the unprecedented remedy of . . . allowing his counsel access to classified material"); *FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 119 n.2 (D.D.C. 2015) (concluding that, while "unclassified summaries of classified information on which an agency relied may be helpful to litigants, they are not required and disclosure may not always be possible" (internal quotation marks omitted)); *Al-Aqeel v. Paulson*, 568 F. Supp. 2d 64, 72 (D.D.C. 2008) ("It does not follow logically that because the IEEPA provides for *in camera* review of classified portions of the Administrative Record that it therefore also provides the Plaintiff with a right to non-classified, but privileged, [law-enforcement-sensitive] portions."). Likewise here, plaintiff is not entitled to view classified or otherwise sensitive or privileged information.

At bottom, plaintiff has received all the process he is due. Defendants have notified plaintiff of his designation, disclosed unclassified information supporting the initial designation,

18

and provided plaintiff with an opportunity to be heard, which he exercised in petitioning to be delisted and submitting materials in support thereof.  *See* AR 0035-0037 (U.S. Department of the Treasury website, Press Release, December 1, 2023).  In response to plaintiff's delisting petition, OFAC, at its discretion, issued two questionnaires to plaintiff on February 23 and June 14, 2024, seeking additional information and materials from plaintiff, including details about plaintiff's "public sector positions" and "dates of tenure for each position and a description of duties involved with each role"; "activities since leaving government"; "relationship" with "high-level members of the Giammattei administration"; "activities since designation"; U.S. and non-U.S. "accounts and assets," and "company ownership or holdings"; his participation, if any, in the Government of Guatemala's purchase of "Sputnik V COVID-19 vaccines"; "legal proceedings" related to any investigations of plaintiff by the Department of Justice and the Federal Bureau of Investigations; and "any additional information [plaintiff] deem[s] appropriate that could assist OFAC in the review of [his] request for reconsideration."  *See* AR 0042-0046 (Letter, OFAC to Schacht Law, Questionnaire 1, February 23, 2024) (capitalization altered); AR 0062-0064 (Letter, OFAC to Schacht Law, Questionnaire 2, June 14, 2024) (capitalization altered).  Complying with its delisting procedures, *see* 31 C.F.R. § 501.807, OFAC then adjudicated plaintiff's petition "[a]fter reviewing the totality of information available to OFAC . . . against the material [plaintiff] provided to OFAC in numerous submissions," and issued a written decision articulating the specific reasons for denying his delisting petition.  AR 0001-0004 (Denial Notification Letter, February 7, 2025).  "Due process does not require more." *Bello*, 94 F.4th at 1076.

Summary judgment is thus granted to defendants as to plaintiff's lack-of-notice claims, asserted only in briefing.

19

28

### C.    OFAC's Designation of Plaintiff Under E.O. 13818 Complies with the APA

Plaintiff's final claim is that "defendants acted arbitrarily and capriciously when designating plaintiff under E.O. 13818 and then in failing to delist him." Pl.'s Mem. at 10-14; *see also* SAC ¶¶ 32-37 ("Cause of Action – Failure to Delist Violation of the Administrative Procedure Act Sufficient to Warrant Mandamus"). This claim also fails.

In evaluating agency actions under the "arbitrary and capricious" standard, courts "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Ore. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). "An agency acts arbitrarily or capriciously if it has relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation either contrary to the evidence before the agency or so implausible as to not reflect either a difference in view or agency expertise." *Defs. of Wildlife v. Jewell*, 815 F.3d 1, 9 (D.C. Cir. 2016) (citing *State Farm*, 463 U.S. at 43). To survive arbitrary and capricious review, the agency must have reviewed relevant data and articulated a satisfactory explanation establishing a "rational connection between the facts found and the choice made." *Ark Initiative v. Tidwell*, 816 F.3d 119, 127 (D.C. Cir. 2016) (quoting *State Farm*, 463 U.S. at 43). Moreover, when review of an agency's action is "bound up with a record-based factual conclusion," the reviewing court must determine whether that conclusion "is supported by substantial evidence." *Dickinson v. Zurko*, 527 U.S. 150 (1999) (quotations omitted). "Substantial evidence" is "enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury." *Defs. of Wildlife*, 815 F.3d at 9 (quotations and citation omitted).

"[C]ourts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). Nevertheless, the scope

20

29

of review under the "arbitrary and capricious standard is 'highly deferential,'" *Am. Trucking Ass'ns, Inc. v. Fed. Motor Carrier Safety Admin.*, 724 F.3d 243, 245 (D.C. Cir. 2013) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 997 (D.C. Cir. 2008)), and "narrow," such that "a court is not to substitute its judgment for that of the agency," *Judulang*, 565 U.S. at 53 (quoting *State Farm*, 463 U.S. at 43).  This "highly deferential" standard, which "presumes agency action to be valid," *Defs. of Wildlife*, 815 F.3d at 9 (D.C. Cir. 2016) (quotations and citation omitted), "is especially applicable [to] . . . 'technical determinations on matters to which the agency lays claim to special expertise,'" *Rosebud Mining Co. v. Mine Safety & Health Admin.*, 827 F.3d 1090, 1101 (D.C. Cir. 2016) (quoting *Building and Construction Trades Department v. Brock*, 838 F.2d 1258, 1266 (D.C. Cir. 1988)).  As relevant here, matters involving national security and foreign affairs are subject to such heightened deference.  *See Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) ("[O]ur review—in an area at the intersection of national security, foreign policy, and administrative law—is extremely deferential.").

Directly on point, a heightened deference is applied in economic sanctions cases, such as the instant matter.  *See, e.g.*, *id.* (showing "extreme[]" deference to OFAC's decision to block assets of an Islamic relief organization that had, based on OFAC's findings, violated anti-terrorism laws); *Karadzic v. Gacki*, 602 F. Supp. 3d 103, 115 (D.D.C. 2022) (recognizing that when assessing an OFAC agency action the "standard of review in the APA context is not demanding . . . [and] [t]his is especially true when the actions under review involve foreign affairs and national security"); *Strait Shipbrokers Pte. Ltd. v. Blinken*, 560 F. Supp. 3d 81, 94 (D.D.C. 2021) ("Deference for agency decision-making is heightened in the context of executive blocking decisions, which lie 'at the intersection of national security, foreign policy, and administrative law.'" (quoting *Islamic Am. Relief Agency*, 477 F.3d at 734)); *Olenga v. Gacki*, 507 F. Supp. 3d

21

30

260, 280 (D.D.C. 2020) ("The D.C. Circuit has shown 'extreme' deference to blocking orders, which fall 'at the intersection of national security, foreign policy, and administrative law.'" (citation omitted)); *Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*, 750 F. Supp. 2d 150, 155 (D.D.C. 2010) ("[C]ourts owe a substantial measure of 'deference to the political branches in matters of foreign policy,' including cases involving blocking orders." (citation omitted)); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 84 (D.D.C. 2002) ("Blocking orders are an important component of U.S. foreign policy, and the President's choice of this tool to combat terrorism is entitled to particular deference."), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003); *Pejcic v. Gacki*, Case No. 19-cv-2437 (APM), 2021 WL 1209299, at *6 (D.D.C. Mar. 30, 2021) ("The court's review is particularly deferential in this case because the issues at hand implicate national security, foreign policy, and administrative law."); *Rakhimov*, 2020 WL 1911561, at *6 ("The D.C. Circuit . . . has urged courts to be particularly deferential to executive blocking orders, decisions 'at the intersection of national security, foreign policy, and administrative law.'" (citation omitted)).

The unredacted and redacted portions of the administrative record—the former of which was made available to the Court, *ex parte* and *in camera*—reveal no arbitrary or capricious decisionmaking, much less when reviewed under this "extremely deferential" standard. *Islamic Am. Relief Agency*, 477 F.3d at 734. *See also* 50 U.S.C. § 1702(c) ("In any judicial review of a determination made under this section, if the determination was based on classified information . . . such information may be submitted to the reviewing court *ex parte* and *in camera*."); *Rahmani*, 2024 WL 1701681, at *17 (acknowledging the propriety of reviewing an OFAC administrative record *ex parte* and *in camera*). Consideration of only the contents of the redacted, publicly available, portions of the record are sufficient here.

22

As defendants recount, the administrative record makes clear that plaintiff, a foreign national, served as the head of a "powerful quasi-cabinet level agency created by Guatemalan President Alejandro Giammattei"; "influenced the government contracts process to benefit himself and close associates"; "colluded with other Guatemalan government officials to illegally award contracts to favored bidders outside of Guatecompras, the Guatemalan government's formal procurement system"; "used antiquated procurement law to forego the bidding process and secure government contracts for companies in which he has a financial interest"; and "solicited large kickbacks to facilitate the purchase of the Russian Sputnik V vaccines by the Government of Guatemala." AR 0035-0036 (U.S. Department of the Treasury website, Press Release, December 1, 2023). Such conduct provides a reasonable basis to conclude that plaintiff directly or indirectly engaged in, "corruption, including the misappropriation of state assets, the expropriation of private assets for personal gain, corruption related to government contracts or the extraction of natural resources, or bribery." *See* E.O. 13818, § 1(a)(ii)(B)(1). In short, plaintiff's role and conduct, while serving in the Guatemalan government, satisfied the criteria for designation as set forth by the President in E.O. 13818.

Plaintiff challenges OFAC's judgment, recalling evidence already considered by the agency. *See* AR 0002 (Denial Notification Letter, February 7, 2025) (summarizing evidence submitted by Plaintiff to OFAC for purposes of delisting); AR 0026 (Excerpts of Denial Evidentiary Memorandum) (noting that OFAC "carefully considered the arguments made by [plaintiff]"). OFAC did not act arbitrarily and capriciously in rejecting those arguments. Indeed, OFAC's review of the totality of the evidence submitted appears thorough, and its explanations for denying plaintiff's petition for removal from the SDN List are well-reasoned.

23

For instance, plaintiff asserts that he "was investigated and cleared by the [sic] Guatemala's special anti-corruption agency" for the alleged solicitation of kickbacks from a Russian entity that made COVID-19 vaccines, Pl.'s Mem. at 2, and argues that because he was "exonerated," that should be sufficient to delist, *id.* at 7. Yet, as OFAC explained in its letter denying reconsideration, "any decisions made by law enforcement, prosecutors, or judicial officials in Guatemala, the United States, or any other jurisdiction, are not conclusive with respect to the ability and authority to enact U.S. sanctions designations under E.O. 13818." AR 0003 (Denial Notification Letter, February 7, 2025). That is because the "legal procedures, substantive requirements, and standards of proof applicable to the proceedings of a foreign tribunal may mean that an exoneration of a designated person in that tribunal is irrelevant to an OFAC delisting determination, even if that foreign proceeding is conducted properly." AR 0003. Conducting its own independent review, OFAC has "determined that the arguments submitted by [plaintiff] do not refute the [classified and/or law-enforcement sensitive] information available to OFAC." AR 0003 (Denial Notification Letter, February 7, 2025); *see also id.* (disclosing that OFAC has "derogatory information related to the Government of Guatemala's purchase of the Sputnik V COVID-19 vaccines"); AR 0012, 0017-0018 (Excerpts of Denial Evidentiary Memorandum and Exhibit List) (noting that classified information indicates that plaintiff "has not been truthful with OFAC and has engaged in a pattern of public corruption in Guatemala"; denoting classified information addressing plaintiff's arguments relating to the Sputnik V COVID-19 vaccine procurement; and disclosing that OFAC became aware of "[n]ew information about [plaintiff's] corrupt activities from 2020 to 2022").

Plaintiff also argues that defendants "identif[ed] Plaintiff as 'corrupt' solely on the basis of his libelous news articles and not on the basis of any real evidence." Pl.'s Mem. at 3. Again, this assertion is also belied by the record, which, although plaintiff cannot review it in its entirety, is

24

33

replete with classified and/or law-enforcement sensitive information confirming OFAC's conclusion that plaintiff "has not been truthful with OFAC and has engaged in a pattern of public corruption in Guatemala."  AR 0012 (Excerpts of Denial Evidentiary Memorandum and Exhibit List).  Moreover, as OFAC further noted, plaintiff in seeking reconsideration "never assert[ed] that he has not engaged in corruption," but rather only "maintained that OFAC does not have credible evidence of corruption or proof that he has broken any laws."  AR 0025.

Finally, plaintiff contends that in the context of the delisting process, he "answer[ed] the financial questions put to him [by OFAC] and specifically provided banking information and the exact location of real estate that he owns."  Pl.'s Mem. at 6.  "But here too, the record tells a different story."  Defs.' Mem. at 28.  In his March 28 and July 8, 2024 responses to OFAC's questionnaires, plaintiff "refus[ed] to provide any details regarding his income and assets, activities since leaving government, plans for financially supporting himself, and relationships with Guatemalan government officials."  AR 0023 (Excerpts of Denial Evidentiary Memorandum and Exhibit List) (citing Ex. 7, AR 0050, where plaintiff claimed that he "had no personal relationships with anyone [in the Giammattei administration] other than the former President" and has "no plan" to "support himself financially" and "hopes to be delisted so he can work again"); *see also* AR 0025 n.27 (plaintiff "failed to provide sufficient responses or supporting documentation aside from public disclosures required for Guatemalan government officials from 2020 and 2021, claiming that he could not provide information on advisory work that he has performed for work following his departure from government service").  Plaintiff's lack of candor, coupled with his lack of "accountability for his actions" or "remorse," reasonably establish that plaintiff "still meets his original basis for designation" and "has not demonstrated a positive change

25

in behavior or remedial measures that warrant his removal from the SDN List."   AR 0023, 0025-0026.

In sum, the agency's determinations, supported by substantial evidence, are not arbitrary and capricious, and thus summary judgment is granted to defendants on plaintiff's substantive challenge under the APA to his continued designation.[2]

## IV.    CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED**, and defendants' cross-motion for summary judgment is **GRANTED**.  An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  July 24, 2026

**BERYL A. HOWELL**
United States District Judge

---

[2]    Since summary judgment is granted to defendants, defendants' alternative arguments challenging the type of relief sought by plaintiff need not be reached.  *See* Defs.' Mem. at 29-31.

26

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LUIS MIGUEL MARTINEZ MORALES, | |
| Plaintiff, | |
| v. | Civil Action No. 24-2519 (BAH) |
| UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL, *et al.*, | Judge Beryl A. Howell |
| Defendants. | |

## ORDER

Upon consideration of plaintiff Luis Miguel Martinez Morales's Motion for Summary Judgment, ECF No. 24, defendants United States Department of the Treasury, Office of Foreign Asset Control, *et al.*'s Cross-Motion for Summary Judgment, ECF No. 27, the related legal memoranda in support and in opposition, and the entire record herein, for the reasons set forth in the accompanying Memorandum Opinion, it is hereby—

**ORDERED** that, plaintiff's Motion for Summary Judgment, ECF No. 24, is **DENIED**; it is further

**ORDERED** that defendants' Cross-Motion for Summary Judgment, ECF No. 27, is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**

*This is a final and appealable Order.*

Date:  July 24, 2026

_____
**BERYL A. HOWELL**
United States District Judge

36